UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

MOLLY M.,[1]

    Plaintiff,

v.

ANDREW M. SAUL,

    Defendant.

Case No. 21-cv-00276-RMI

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 26, 27

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying her application for benefits under Titles II and XVI of the Social Security Act. *See* Admin. Rec. at 32.[2] Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council (*see id*. at 1-3), thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both Parties have consented to the jurisdiction of a magistrate judge (dkts. 9 & 11), and both parties have moved for summary judgment (dkts. 26 & 27). For the reasons stated below, Plaintiff's motion for summary judgment is granted, and Defendant's motion is denied.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in seventeen attachments to Docket Entry #21. *See* (dkts. 21-1 through 21-10).

aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**PROCEDURAL HISTORY**

In June of 2018, Plaintiff filed applications for benefits under Titles II and XVI alleging an onset date of October 1, 2017, as to both applications. AR at 32. On March 24, 2020, the ALJ entered an unfavorable decision denying Plaintiff's application and finding her not to be disabled. *See id*. at 25-26. In November of 2020, the Appeals Council denied Plaintiff's request for review. *Id*. at 1-5. Two months later, in January of 2021, Plaintiff sought review in this court (*see* Compl. (dkt. 1) at 1-2) and the instant case was initiated.

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*id*. § 416.920; *see also id*. at § 404.1520). While the claimant bears the burden of proof at steps one through four

2

(*see Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020)), "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ appropriately set forth the applicable law regarding the required five-step sequential evaluation process. AR at 33-34.

At step one, the ALJ must determine if the claimant is presently engaged in "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i),[3] which is defined as work done for pay or profit and involving significant mental or physical activities. *See Ford*, 950 F.3d at 1148. Here, the ALJ determined Plaintiff had not performed substantial gainful activity since her alleged onset date. AR at 34. At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe" (*see* 20 C.F.R. § 404.1520(a)(4)(ii)), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant will not be found to be disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments: posttraumatic stress disorder ("PTSD"); chronic fatigue syndrome; depressive disorder; and, anxiety disorder. AR at 35. While mentioning certain other conditions in passing elsewhere in her decision, the ALJ failed to evaluate the conditions at step two, or to otherwise develop the record as to their limitations such as to account for them at step three or during the formulation of the residual functioning capacity ("RFC") – those conditions are: panic disorder, chronic severe insomnia, environmental sensitivities, and nervous exhaustion. *See id.* at 35, 36-37. However, as explained below, this error is of no consequence as the record otherwise establishes Plaintiff's disability such that no further proceedings are warranted.

At step three, the ALJ is tasked with evaluating whether the claimant has an impairment or combination of impairments that meet or equal an impairment in the "Listing of Impairments." *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe impairments that are considered to be sufficiently severe to prevent any individual so afflicted

---

[3] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in different sections of the CFR. For the sake of convenience, the court will generally cite to the Title II regulations herein unless it is necessary to note otherwise.

3

from performing any gainful activity. *Id*. at § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." *Id*. at § 404.1525(c)(3). In order for a claimant to show that his or her impairment matches a listing, it must meet all of the specified medical criteria; and, an impairment that manifests only some of those criteria, no matter how severely, does not "meet" that listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If an impairment either meets the listed criteria, or if one or more impairments are determined to be medically equivalent to the severity of that set of criteria, that person is conclusively presumed to be disabled without a consideration of age, education, or work experience. *See* 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or equals the criteria or the severity of any of the listings. *See* AR at 35-36.

If a claimant does not meet or equal a listing, the ALJ must formulate the claimant's RFC, which is defined as the most that a person can still do despite the limitations associated with their impairments. *See* 20 C.F.R. § 404.1545(a)(1). Here, the ALJ determined that Plaintiff retained the ability to perform the full range of work at all exertional levels – but with the following non-exertional limitations: Plaintiff was limited to work that is routine in nature with minimal changes from day to day; she was also limited to having no regular interaction with the general public, and no more than occasional interaction with coworkers and supervisors. *See id*. at 36-39.

Following the formulation of the RFC, the ALJ must determine – at step four – whether the claimant is able to perform his past relevant work, which is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *See* 20 C.F.R. § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can perform her past relevant work, the claimant will not be found disabled. *Id*. § 404.1520(f). Otherwise, at step five, the burden shifts to the agency to prove that the claimant can perform a significant number of other jobs that are available in the national economy. *See Ford*, 950 F.3d at 1149. To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly referred to as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2; or, alternatively, the ALJ may rely on the testimony of a vocational expert

4

("VE"). *Ford*, 950 F.3d at 1149 (citation omitted). A VE may offer expert opinion testimony in response to hypothetical questions about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy, or the demands of other jobs that may be available in the national economy. *See* 20 C.F.R. § 404.1560(b)(2). An ALJ may also use other resources for this purpose, such as the Dictionary of Occupational Titles ("DOT"). *Id*. Here, the ALJ determined that Plaintiff was able to perform her past relevant work as a tutor and music teacher – despite the fact that those positions presumably involve constant interaction with the person(s) being tutored or taught music. *See id*. at 39. The ALJ alternatively determined that Plaintiff could also perform the functions of other jobs that are available in significant numbers in the national economy – namely, touch-up screener, document preparer, and final assembler. *Id*. at 41. Accordingly, the ALJ determined that Plaintiff had not been disabled at any time since October 1, 2017, her alleged onset date. *Id*.

**DISCUSSION**

At the outset, the court will note that the ALJ in this case clearly erred at step two and beyond by failing to account for, and develop the record regarding Plaintiff's panic disorder, her chronic severe insomnia, her environmental sensitivities, and her nervous exhaustion. Even the two non-examining state agency consultants (who were the only opinion providers in the record that the ALJ found to be persuasive) found that Plaintiff suffered from these conditions. *See id*. at 98, 101, 111, 114. However, the notation of that error is purely academic due to the fact that the ALJ improperly rejected other evidence that clearly establishes Plaintiff's disability at step three and beyond, such that no further administrative proceedings are necessary.

Plaintiff has raised the following issues: (1) the ALJ wrongly discredited Plaintiff's symptom testimony; (2) the RFC is not supported by substantial evidence; and (3) the ALJ posed incomplete hypothetical questions to the VE. *See* Pl.'s Mot. (dkt. 26) at 3. As for requested relief, Plaintiff has asked for a remand for further proceedings. *See id*. at 12. For the reasons stated below, the court concludes – *sua sponte* – that the requirements of the credit-as-true doctrine are easily satisfied and that further administrative proceedings would be useless because the ALJ

would be required to find Plaintiff disabled on remand.

If there are any questions about the court's authority to effect a remand outside the scope of that which has been requested by a party, the following should be noted. While no party has suggested an application of the credit-as-true doctrine or a remand for benefits, the court can, and very well should, raise and address that issue *sua sponte* because the court has an independent duty to determine whether the ALJ's findings (in every regard) are supported by substantial evidence – and to take any consequentially appropriate action. *See e.g. Sims v. Apfel*, 530 U.S. 103, 110 (2000) (explaining that an appeal from the denial of Social Security benefits is quite unlike ordinary civil litigation because the underlying claims process before the ALJ is not adversarial). While claimants must carry the burden of demonstrating that they qualify for benefits, the law does not leave them entirely to their own devices; as such, lapses and omissions in pleading or procedure cannot be relied upon to withhold or delay benefits from a claimant who may otherwise be entitled to them. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 n.3 (9th Cir. 1999). While a plaintiff must make his or her own arguments for remand, that does not relieve this court of its independent duty to undertake a fulsome and searching review of the facts in order to render a thoroughgoing and independent determination as to whether the ALJ's findings are supported by substantial evidence, as well as ascertaining the upshot of that determination. *See Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985).

The failure by Plaintiff or her counsel to raise an error is not an acceptable reason for a court to actively ignore it. *See Ariz. State Dep't of Pub. Welfare v. Dep't of Health, Educ. & Welfare*, 449 F.2d 456, 472 (9th Cir. 1971); *Hess v. Sec'y of Health, Educ. & Welfare*, 497 F.2d 837, 840 (3d Cir. 1974); *see also Moran v. Astrue*, 569 F.3d 108, 112 (2nd Cir. 2009). A significant number of courts faced with this issue have arrived at a similar conclusion. *See e.g., Farley v. Colvin*, 231 F. Supp. 3d 335, 339-41 (N.D. Cal. 2017) (collecting cases standing for the proposition that while a remand request is normally made by a party, there is no reason why a district court may not remand, *sua sponte*, for an error that was not raised); *see also Cortes v. Berryhill*, No. 3:16-cv-01910 (JCH), 2018 U.S. Dist. LEXIS 45256, 2018 WL 1392903, at *2-6 (D. Conn. March 19, 2018) (court *sua sponte* raised issue of ALJ's failure to develop the record

and reversed and remanded because it "could not ignore" a gap in record of mental health treatment); *Peterson v. Comm'r of Soc. Sec.*, No. 16-2912, 2018 U.S. Dist. LEXIS 26355, 2018 WL 953345, at *1 n.1 (D. N.J. Feb. 20, 2018) (same); *Taylor-Tillotson v. Colvin*, No. 13-80907-CIV-WM, 2014 U.S. Dist. LEXIS 177510, 2014 WL 7211888, at *13 (S.D. Fl. Dec. 18, 2014) ("A reviewing court may *sua sponte* address issues in social security cases"); *Mangan v. Colvin*, No. 12 C 7203, 2014 U.S. Dist. LEXIS 120515, 2014 WL 4267496, at *1 (N.D. Ill. Aug. 28, 2014) (same); *Gravel v. Barnhart*, 360 F. Supp. 2d 442, 452 n.24 (N.D.N.Y. 2005) (noting additional issues that warrant remand *sua sponte*). Having addressed that threshold issue, the court will now proceed to a description of the reversible errors committed by the ALJ.

In a mental residual functioning capacity assessment dated December 3, 2018, James Goetz, Psy.D., provided a detailed and thorough narrative setting forth the details of his two year treatment relationship with Plaintiff. *Id*. at 785. He also thoroughly described the etiology of Plaintiff's cognitive and emotional condition. *See id*. He noted that Plaintiff's history of trauma and her trauma-related conditions cause her a great deal of suffering which gives rise to a number of marked limitations in various aspects of work-related functioning. *Id*. Dr. Goetz elaborated further as such:

> [Plaintiff's] symptoms are consistent with those persons suffering from chronic, developmental psychological trauma. In my practice I often see individuals, primarily female, who were victims of childhood sexual abuse and trauma. They struggle valiantly throughout their youth and early adulthood to attempt to establish relationships, secondary education, and other life pursuits, but [] eventually reach a point in their adulthood where they can no longer pursue these interests and struggle to simply survive day-to-day. Life becomes exceedingly challenging, as they are easily overwhelmed by the most mundane and simple tasks. Often they consider suicide as an option to end their suffering. Unfortunately, [Plaintiff] fits this profile . . . Without the support of long-term disability benefits, [Plaintiff's] prognosis is not good. Her diagnosis is chronic and I do not anticipate full recovery for over 12 month's time, if ever.

*Id*.

Importantly, he noted that he had personally "witnessed a steady decline in [Plaintiff's] functioning over the course of these years, from being employed as a tutor and music teacher, to her current state where she has difficulty completing the most basic tasks including attending to

her personal hygiene, doing laundry and household chores, as well as bill-paying and attending medical appointments. *Id*. He opined that Plaintiff experienced marked limitations in the following broad areas: understanding and memory; sustaining concentration and maintaining persistence and pace; interacting with others; and, in her ability to adapt to her surroundings. *Id*. at 783-84. More specifically, he found marked limitations in the following sub-categories: the ability to remember locations and work-like procedures; the ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to work in coordination or proximity to others without being distracted by them; the ability to complete a normal workday or work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to respond appropriately to changes in the work setting; and, the ability to travel in unfamiliar places or use public transportation. *Id*.

As far as the consistency of Dr. Goetz's opinion is concerned, another of Plaintiff's treatment providers, Anna O'Malley, M.D., found Plaintiff to be experiencing a substantially similar list of marked limitations in each of the following categories of work-related functionality: the ability to remember locations and work-like procedures; the ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination or proximity to others without being distracted by them; the ability to make simple work-related decisions; the ability to complete a normal workday or work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to respond appropriately to changes in the work setting; the ability to travel in unfamiliar places or use public transportation; and, the ability to set realistic goals or make plans independently of others. *Id*. at 789.

The remainder of the record is teeming with medical evidence that supports these findings. The third-party function report submitted by Plaintiff's friend (*see id*. at 316-23) paints a picture of Plaintiff's limitations that is wholly consistent with what was opined by Drs. Goetz and

8

O'Malley; such is also the case with the function reports completed and submitted by Plaintiff herself (*see id*. at 333-41). The same is true for the virtual entirety of the nearly 1000 pages of treatment notes and other medical records generated throughout the years. *See e.g*, *id*. at 423-25, 426 ("[Plaintiff] suffers with suicidal ideation at times"); 439 (diagnosed with complex PTSD, mixed anxiety and depressive disorder, and insomnia); 442 (Plaintiff's chronic fatigue is complicated by, and likely stems from, her PTSD); 443-52; 453 (Plaintiff's fatigue is ever-present, and noting that Plaintiff has been coping with her PTSD stemming from early childhood trauma, which was reactivated and compounded by suffering an automobile accident during her adulthood); 460 (Plaintiff is not able to work given her "profound fatigue, difficulty managing her energy, and making wise decisions about the ways in which she expends her previous energy."); 464 ("She continues to struggle with organization," noting also that an increase in the dosage of her anti-psychotic medication made her suicidal); 466 (Plaintiff's "[e]motional state vacillates between depressed, anxious, disorganized, [and] overwhelmed."); 469 (Plaintiff reported that on several days per month, she regularly experiences thoughts that she would be better off dead); 479 (Plaintiff's inability to function, which results in her inability to work and provide for herself, has itself exacerbated the impairments that caused her inability to function in the first place – yielding a vicious cycle from which no exit is apparent); 485 (Plaintiff's inability to make ends meet by working contributes to her depression, anxiety, and feelings of hopelessness); 488 (Dr. Goetz opining that Plaintiff may never be able to overcome the limitations caused by her impairments); 494 (Plaintiff suffers from insomnia, fatigue, poor appetite, and anhedonia); 523 (Plaintiff is perpetually fatigued and nervous, unable to put together enough funds to cover her rent, and was again experiencing suicidal ideations); 532 (same); 535 (same); 537 (same); 540-48 (same); 561-63 ("she struggles greatly with ordinary life . . . [and] frequently experiences challenges in respect to sleep, work, social relationships, and nutrition, as well as intimate, family and work group relationships."); 564-629 (same); 634-37 (Plaintiff's chronic fatigue even affects her personal hygiene routine); 647-54 ("she continues to have thoughts of not being alive and that that might be easier for her, but denies any plan or intent to take her life."); 681 ("[P]laintiff was unable to attend the session today in person due to fatigue . . . did not feel she could manage the driving.");

687-88 ("[Plaintiff] reports she has been having thoughts of ending her life and has a plan to do it . . . her plan would be to go into the woods near her home and eat poison mushrooms."); 694 (citing her chronic fatigue, fibromyalgia, and PTSD, Plaintiff "confirmed she was contemplating executing her plan [to end her life] at the end of the month when her money runs out."); 725-26 (suicidal ideations continue); 768 (Plaintiff appears visibly fatigued and it is objectively observed that she has a "very difficult time organizing thoughts."); 830-39 (detailing Plaintiff's "history of sexual and physical trauma [between] age 4 and 14"); 884-930 (same).

As recently as February of 2020, Dr. O'Malley (Plaintiff's primary care provider since 2011) noted that Plaintiff "continues to struggle with profound fatigue, low energy, and an inability to sustain activity for any length of time [and that] [e]ven relatively low levels of stress are overwhelming for her and I have seen her decompensate even under the most limited of stressors." *Id*. at 933. Dr. O'Malley also noted that Plaintiff has "extreme difficulty organizing around, focusing on, and completing relatively minor tasks." *Id*. Dr. O'Malley concluded by noting that Plaintiff "is a credible patient and she devotes her limited energy to try to improve her functioning. I believe she [would] work if she could[,] [u]nfortunately, she remains debilitated and her prognosis is unclear." *Id*.

Under the regulations that apply to Plaintiff's application, ALJs are required to evaluate the "persuasiveness" of all medical opinions according to several factors (*see* 20 C.F.R. § 416.920c). The first two factors, supportability and consistency, are considered the most important, and the ALJ is required to explicitly address them in his or her decision. *See* 20 C.F.R. § 416.920c(b)(2). The ALJ "may, but [is] not required to," explain how he or she considered the remaining three factors listed in the regulations. *Id*. Although the regulations have eliminated the physician hierarchy, deference to specific medical opinions, and assigning certain weight to any given medical opinion, the ALJ must still articulate how he or she considered the medical opinions and how persuasive he or she finds all of the medical opinions. *See V.W. v. Comm'r of Soc. Sec.*, No. 18-cv-07297-JCS, 2020 WL 1505716, at *14 (N.D. Cal. Mar. 30, 2020); 20 C.F.R. § 416.920c(a), (b). As with all other determinations made by the ALJ, the ALJ's persuasiveness explanation must be supported by substantial evidence. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner

1    of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

2          Here, the ALJ found Dr. Goetz's opinions to be unpersuasive because "his narrative does
3    not adequately support his belief that the claimant has numerous marked mental limitations[,] [and
4    so] [h]is opinion is not entirely consistent with the evidence of the claimant's instances of normal
5    mental findings and somewhat stable mental functions since the allege onset date." *Id*. at 38. This
6    is all the ALJ had to say about rejecting Dr. Goetz's opinions. Similarly, the ALJ found Dr.
7    O'Malley's opinions to be unpersuasive, explaining that her "opinion is also not adequately
8    supported by explanations," and also because she "does not appear to be a specialist in psychiatry,
9    and she evidently did not treat the claimant specifically for her mental health disorders." *Id*. at 38-
10   39. The ALJ's non-persuasiveness determinations as to these opinions are unsupported by
11   substantial evidence.[4] Because the ALJ improperly rejected these opinions, not to mention the
12   wholly consistent and harmonious opinion of Glenn Francis, Psy.D. (much of which is also set
13   forth above), and the consistent statements in the functions reports submitted by Plaintiff and her
14   friend, the opinions of Dr. Goetz and O'Malley will now be credited as true as a matter of law. *See*
15   *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("Where the Commissioner fails to provide
16   adequate reasons for rejecting the opinion of a treating or examining physician, we credit that
17   opinion as a matter of law."); *see also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004)
18   ("Because the ALJ failed to provide legally sufficient reasons for rejecting Benecke's testimony
19   and her treating physicians' opinions, we credit the evidence as true."); *see also Moisa v.*

---

[4] The ALJ's non-persuasiveness findings in this case rested on a most disagreeable – and now quite familiar – tactic where a veritable constellation of detailed and voluminous findings by multiple doctors operating in their respective fields of specialization is casually discarded on a wholesale basis because those findings and opinions are supposedly "inconsistent" with certain isolated notations, entered by intake staff at hospitals or doctors' offices during non-mental-health treatment, through which a nurse or some other intake staff expresses something to the effect that Plaintiff appeared to be in no distress at the moment, or appeared to occupy a stable mood that day. Given that the definition of "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," (*see Biestek*, 139 S. Ct. at 1154), this tactic is categorically incapable of satisfying that standard because no reasonable mind would ever accept such casual intake notations in order to negate the considered opinions of Drs. Goetz and O'Malley given that their opinions were based on years-long treatment relationships, countless clinical observations, and a host of specialized diagnostic tools find techniques, not to mention the fact that their opinions were consistent with and supported by a veritable mountain of medical evidence. Thus, the entirety of the ALJ's decision, from step two forward, is contrary to – and quite effectively negated by – the totality of the evidence in the record (most of which the court has summarized above).

*Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility.").

### **Nature of Remand**

The decision whether to remand for further proceedings or for payment of benefits generally turns on the likely utility of further proceedings. *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1169 (9th Cir. 2008). A district court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292. The Court of Appeals for the Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Remand for an immediate award of benefits is appropriate when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and, (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id*. The second and third prongs of the test often merge into a single question; that is, whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id*. at 1178 n.2; *see also Garrison v. Colvin*, 759 F.3d 995, 1021-23 (9th Cir. 2014) (when all three conditions of the credit-as-true rule are satisfied, and a careful review of the record discloses no reason to seriously doubt that a claimant is, in fact, disabled, a remand for a calculation and award of benefits is required). For the reasons stated below, the court finds that all three of these conditions are easily satisfied.

In light of the above-discussed evidence, it is abundantly clear to the court that Plaintiff has in fact been disabled <u>at least</u> since her alleged onset date, and it is equally clear that further administrative proceedings would be useless because the ALJ would be required to find Plaintiff disabled on remand. In light of the opinions of Drs. Goetz and O'Malley, Plaintiff's plethora of mental impairments at least equal the severity of the criteria for listing-level depression (Listing 12.04), anxiety and obsessive-compulsive disorders (Listing 12.06), and trauma and stressor-

12

related disorders (Listing 12.15).

      Plaintiff's depressive disorder would compel a disability finding at step three because it meets or at least equals the criteria for Listing 12.04(A)(1) (depressive disorder). *See* 20 C.F.R. Pt. 404, Subpt. P, app. 1, §12.04 – (if not individually, then in combination with her PTSD, chronic fatigue syndrome, anxiety disorder, panic disorder, chronic severe insomnia, environmental sensitivities, and nervous exhaustion). To satisfy the criteria of Listing 12.04, it is necessary to satisfy the pertinent criteria listed in subparts (A)(1) and (B), or (A)(1) and (C). *See id*. Subpart (A)(1) requires medical documentation of a depressive disorder, characterized by five or more of the following: depressed mood; diminished interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; observable psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; or thoughts of death or suicide. §12.04(A)(1). As mentioned above, perhaps with the exception of psychomotor agitation, the record clearly manifests that the combination of Plaintiff's impairments satisfied virtually every factor in Subpart (A)(1) – let alone satisfying 5 out of 9. It is indisputable that Plaintiff's impairments cause her to experience low energy, poor motivation, social withdrawal, anhedonia, chronic fatigue, crying spells, feelings of guilt, frustration, and suicidal ideations (coupled with a detailed plan and intent). Turning to Subpart (B) of Listing 12.04, that provision requires: extreme limitation in one, or marked limitations in two, of the following areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; adapting or managing oneself. § 12.04(B). Drs. Goetz and O'Malley found that Plaintiff's depression (in combination with her other impairments) satisfies all four prongs of Subpart (B) – let alone two out of four – by finding marked limitations in all four of the Subpart (B) categories. Accordingly, on remand the ALJ would clearly be required to find that Listing 12.04's requirements are satisfied.

      Plaintiff's PTSD also meets or equals the criteria of Listing 12.15. As was the case above, in order to satisfy the criteria for listing-level PTSD under §12.15 – it is necessary to satisfy the pertinent criteria listed in subparts (A) and (B), or (A) and (C). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.15. The first part of Listing 12.15(A) requires meeting all of the following criteria:

13

exposure to actual or threatened death, serious injury, or violence; subsequent involuntary re-experiencing of the traumatic event (e.g., intrusive memories, flashbacks, or dreams); avoidance of external reminders of the event; disturbances in mood and behavior; and, increases in arousal and reactivity (e.g., exaggerated startle response or sleep disturbance). *Id*. Drs. Goetz and O'Malley found that Plaintiff met all of these criteria as a result of the interaction between the trauma she experienced due her childhood sexual abuse (which was re-triggered and exacerbated by the automobile accident she suffered as an adult). Subpart (B) has the same requirements and criteria discussed above; and, as mentioned, Drs. Goetz and O'Malley found marked limitations in all four categories. Thus, on remand, the ALJ would likewise be required to find that Plaintiff's PTSD has also been clearly disabling under Listing 12.15(A) and (B) since her alleged onset date. The same analysis would yield the same result for Plaintiff's anxiety disorder and panic disorder when considered under Listing 12.06 (anxiety and obsessive-compulsive disorders).

Even putting aside the fact that Plaintiff clearly meets or equals the severity of the pertinent criteria of three separately listed impairments, the evidence also conclusively establishes that Plaintiff has been disabled since her alleged onset date because the combination of her various impairments would also compel a disability finding during the formulation of the RFC. The combined effects of her debilitating depression, her anxiety disorder, her PTSD, her chronic fatigue syndrome, her panic disorder, her chronic severe insomnia, her environmental sensitivities, and her nervous exhaustion can only result in the clear conclusion that Plaintiff has no residual functioning capacity to function in the workplace.

Lastly, the ALJ would also be required to find Plaintiff disabled at step five based on the VE's testimony. The VE testified that someone with Plaintiff's education and background would not be employable if they were to consistently miss as little as 90 minutes of work each day. *See id*. at 93-94. Clearly, the picture painted by the evidentiary record (as set forth above), and by the opinions of Drs. Goetz and O'Malley, is of a person who would struggle to work for even 90 minutes out of an 8-hour day – let alone missing less than 90 minutes out of an 8-hour day. Thus, Plaintiff would also be found disabled based on the VE's testimony at step five.

At this juncture, the court will note that in cases where each of the credit-as-true factors is

14

met, it is generally only in "rare instances" where a review of the record as a whole gives rise to a "serious doubt as to whether the claimant is actually disabled." *Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (citing *Garrison*, 759 F.3d at 1021). This is not one of those "rare instances," as the record leaves no room to doubt that Plaintiff has in fact been disabled, at least since her alleged onset date, if not much earlier. Needlessly remanding a disability claim for further unnecessary proceedings would only delay much needed income for claimants such as Plaintiff who are unable to work and who are entitled to benefits; doing so would in turn subject them to "tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand." *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1398 (9th Cir. 1988). The court is satisfied that the ALJ's unsupported conclusions were thoroughly negated by the overwhelming tide of the record evidence which conclusively and convincingly establishes Plaintiff's longstanding disability such that no further inquiry is necessary. Plaintiff is clearly a seriously impaired person who valiantly (as Dr. Goetz put it) operates at the very edge of her ability to cope; in light of which, the court harbors no doubt whatsoever that she is, in fact, disabled.

## CONCLUSION

Accordingly, for the reasons stated herein, Plaintiff's Motion for Summary Judgment (dkt. 26) is **GRANTED**, Defendant's Cross-Motion (dkt. 27) is **DENIED**; and, as previously stated (*see* dkt. 28) Defendant's request to strike Plaintiff's motion is **DENIED**. The ALJ's finding of non-disability is **REVERSED**, and the case is **REMANDED** for the immediate calculation and award of appropriate benefits consistent with the findings and holdings expressed herein.

**IT IS SO ORDERED.**

Dated: September 19, 2022

ROBERT M. ILLMAN
United States Magistrate Judge